CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 31 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK



# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| RONALD F. CROMARTIE, JR., | ) | CASE NO. 7:14CV00215 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| DIRECTOR, DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Petitioner, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his confinement for his 2005 conviction in Lynchburg City Circuit Court for possession with the intent to distribute cocaine, second offense. Upon review of the record, the court grants respondent's motion to dismiss the petition as procedurally barred and without merit.

## BACKGROUND

Lynchburg Police Officers Brandon Clark and Joshua Campbell were on patrol in their police cruiser on the evening of May 20, 2011, stopped at a red light, when they saw a black Dodge Durango come through the intersection in front of them.[1] The officers, who had undergone special training in visually estimating speed, deduced that the Durango was going approximately 35 miles per hour in a zone with a posted limit of 25 miles per hour. The officers followed and attempted to catch up to the Durango, as it made a series of sharp turns and continued to accelerate above the speed limit, in their estimation. Clark also saw the Durango cross over the white line divider between the driving lane and the shoulder of the road at one

---

[1] This summary of evidence comes from the testimony presented during the suppression hearing before the circuit court on October 28, 2011.

point. As the police vehicle drew up close behind it, the Durango slowed to within the posted limit and turned onto Garfield Avenue. At that point, the officers triggered their lights to signal the Durango to pull over, which it did.

Clark approached the Durango, and at his request, the driver, Ronald F. Cromartie, Jr., provided driver's license and registration. Clark told Cromartie that the officers had observed him speeding and crossing lane markers. Cromartie said he had missed a turn, was running late, and was not paying attention. Clark called Cromartie's information in to dispatch, using his shoulder microphone. Then, after waiting a few minutes for Cromartie to finish a cell phone call, Clark asked him to step out of the vehicle, which he did. Clark said that police had received a tip about a black Dodge Durango transporting narcotics in the Garfield Avenue area and asked if he could search the vehicle. Cromartie became defensive and asked what probable cause the officers had for a search. He refused to consent to a search, saying that it would be embarrassing in front of his family. Some onlookers had gathered around the scene. Clark told Cromartie that he could get back in his vehicle until Clark returned. Back at the police cruiser, Clark called for a narcotics canine unit to report to the scene. He then realized that he had not asked for insurance information, returned to the Durango, and asked Cromartie for proof of insurance. Cromartie began searching through papers in the glove box, but could not locate his insurance documentation.

During this time, the canine unit arrived. Clark asked Cromartie to step out of his vehicle so that officers could run the canine around it.[2] Cromartie remained in the Durango and asked what probable cause the officers had to use the dog on his vehicle. Clark explained that no probable cause was necessary for use of a canine and that a canine alert on the vehicle would

---

[2] The canine handler testified that standard police procedure called for occupants to exit a vehicle before the narcotics canine runs around it to sniff for drugs.

Case 7:14-cv-00215-GEC-RSB   Document 18   Filed 03/31/15   Page 2 of 21   Pageid#: 496

give the officers probable cause for a search. Clark asked Cromartie again and again to exit the vehicle, but Cromartie, who was exhibiting signs of increasing nervousness, failed to comply. Clark warned that if he did not get out of the vehicle, the officers would pull him out and handcuff him. Cromartie began asking why the officers were doing this to him and begged them to stop touching their guns, which they were not doing. Clark grasped Cromartie's arm to escort him out of the vehicle, but Cromartie jerked away and turned the key in the ignition. An altercation ensued between Cromartie and the officers, who struggled to keep Cromartie from fleeing the scene and from retrieving what they believed might be a firearm out of the center console. Instead, Cromartie grabbed a plastic bag from the console, and out fell a baggie containing a substance that later testing confirmed to be cocaine. In the course of the struggle, an officer used a taser on Cromartie, and another drew his firearm.

Ultimately, the officers extricated Cromartie from the vehicle and placed him under arrest. Authorities also obtained a search warrant for Cromartie's residence, where they found additional cocaine and cash.

Based on these incidents, Cromartie faced felony charges for possession of cocaine with the intent to distribute and obstruction of justice and two misdemeanor charges for resisting arrest and reckless driving. These charges came before Judge Stephen H. Helvin of the Lynchburg General District Court on July 7, 2011, for a preliminary hearing on the felonies and a trial on the misdemeanors. The officers testified about their participation in the traffic stop as herein described. Defense counsel moved to suppress the evidence. He argued that the officers had violated Cromartie's Fourth Amendment rights by stopping his vehicle without probable cause to believe that he was speeding. Judge Helvin asked the parties to present him with authority on this suppression issue, which they did. On July 14, 2011, Judge Helvin heard

3

arguments from counsel and then announced his ruling that the officers had no probable cause for the traffic stop. He granted the motion to suppress the evidence as to the misdemeanor charges, which were dismissed.

Thereafter, based on the same evidence, a grand jury returned felony indictments charging Cromartie with two counts of possession of cocaine with intent to distribute, later amended to second offense, and one count of obstruction of justice. Defense counsel again moved to suppress the evidence. Circuit Court Judge F. Patrick Yeatts conducted a second suppression hearing on October 28, 2011. Both officers testified, and the prosecution played the dashboard camera recording of the traffic stop. A timer on the recording indicated that approximately 12 minutes passed from the initial stop until the officers had Cromartie out of the car and on the ground in handcuffs. In arguing for suppression, defense counsel emphasized the lack of probable cause for the initial stop, as Judge Helvin had ruled. Among other things, he contended that the officers' abandonment of normal traffic stop activities to search for drugs indicated an ulterior drug investigation motive that damaged the credibility of their visual estimate of Cromartie's speed, and that the officers had no probable cause to search Cromartie's vehicle.

Judge Yeatts denied the motion to suppress, however, finding that, viewed objectively, the specially trained officers' visual estimate of Cromartie's speed provided probable cause to pull Cromartie over for speeding under Virginia law, regardless of any ulterior motive they may have had. Judge Yeatts also found that the officers did not exceed the scope of that stop in asking Cromartie to step out of the vehicle or by preparing to run the narcotics canine around his vehicle, while still in the process of obtaining information relevant to the traffic stop. The Virginia case on which the Court primarily relied in reaching this conclusion applied United

4

States Supreme Court precedent to facts similar to Cromartie's case. See Thomas v. Commonwealth, 701 S.E.2d 87 (Va. App. 2010) (recognizing that stopping vehicle for crossing a lane divider was lawful and officers did not exceed the scope of that stop by asking driver to exit vehicle or by walking drug-sniffing dog around it) (citing Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (holding that Fourth Amendment analysis required court to make "an objective assessment of the officer's actions in light of the facts and circumstances confronting [them] at the time, and not on the officer's actual state of mind at the time the challenged action was taken") (internal quotations and citation omitted); Whren v. United States, 517 U.S. 806, 813 (1996) (finding that officer's "ulterior motive" does not nullify an objectively valid "legal justification" for his actions); Arizona v. Johnson, 555 U.S. 323, 333 (2009) (holding that officer may lawfully inquire about matters unrelated to the justification for traffic stop if such actions "do not measurably extend the duration of the stop")).

Thereafter, Cromartie pleaded guilty in the circuit court, pursuant to a plea agreement, to one count of possession with the intent to distribute cocaine, second offense. (CR110022845-00-01.) As part of the agreement, the Commonwealth nolle prossed the two related felony charges. On October 31, 2011, pursuant to the terms of the plea agreement, the Court sentenced Cromartie to 30 years in prison, with 20 years suspended. He did not appeal.

On October 30, 2012, Cromartie filed a petition for a writ of habeas corpus in the circuit court, alleging that: (1) defense counsel was ineffective in failing to suppress evidence that was illegally gathered in a "violent manner"; (2) the prosecution engaged in "egregious and unethical behavior" which "undermined the impartiality [petitioner] received at trial"; (3) the trial court violated petitioner's right against double jeopardy by denying his motion to dismiss; (4) counsel was ineffective in failing to file an interlocutory appeal of the trial court's denial of the motion to

5

dismiss; (5) use of "false testimony" and "tampered evidence" violated petitioner's right to a fair trial; (6) counsel was ineffective in failing to "disclose evidence to the petitioner," resulting in petitioner's making "unintelligent, unknowing and involuntary decisions" regarding his plea; (7) counsel was ineffective for failing to conduct a reasonable investigation; (8) counsel was ineffective for failing to allow the petitioner to testify during the hearing on the motion to suppress; (9) counsel's ineffectiveness "forced [petitioner] into accepting a plea bargain"; (10) the prosecution erroneously calculated petitioner's guidelines using an incorrect drug amount; and (11) counsel was ineffective in failing to properly advise and assist petitioner in seeking post-conviction relief. The circuit court denied Cromartie's habeas petition by order dated July 29, 2013.

Cromartie appealed, raising the following argument:

> THE CIRCUIT COURT ERRED WHEN IT FAILED TO TAKE NOTICE OF AND DENIED [PETITIONER] HABEAS RELIEF ON HIS RAISED CLAIM THAT COUNSEL 1) FAILED TO COMPETENTLY LITIGATE AN ISSUE UNDER THE FOURTH AMENDMENT IN THE SUPPRESSION HEARING, AND 2) DEMONSTRATED A CUMULATIVE PATTERN OF INEFFECTIVE ASSISTANCE; THUS, CONCLUDING THAT COUNSEL'S REPRESENTATION DID NOT FALL BELOW THE STANDARDS OF REASONABLENESS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND [PETITIONER] WAS NOT DEPRIVED OF HIS RIGHT TO EFFECTIVE COUNSEL.

(Habeas App. Pet. 2, ECF No. 2-1.) By order dated March 25, 2014, the Supreme Court of Virginia found "no reversible error in the judgment complained of," and denied Cromartie's habeas appeal. (Record No. 131488.)

In his federal habeas petition, Cromartie raises two claims of ineffective assistance of counsel, each with multiple subparts:

> Ground One: Trial counsel was ineffective in failing "to competently litigate an issue under the 4th Amendment" by: (1) failing "to make an adequate

investigation into potential legal defenses due to the facts developed by the case";
(2) failing "to make a Terry challenge or educate the court by presenting
authorities that petitioner's 4th Amendment rights" were violated; (3) failing "to
challenge the government's use of a tip justifying police officer's decision to
exceed the scope of seizure"; and (4) "conduct[ing] extremely poor cross-
examination which left important facts concerning the traffic stop incident
inconclusive."

Ground Two: Trial "counsel demonstrated a cumulative pattern of
ineffective assistance" by (1) "erroneously advis[ing] that the doctrine of
collateral estoppel was dispositive on barring the Commonwealth from
prosecuting the indictment against petitioner"; (2) "advising petitioner that the
denial of the defense motion to dismiss could not be challenged"; (3) failing "to
reasonably advise petitioner of potential affirmative legal defenses to be used at
suppression hearing or at trial"; (4) "depriving petitioner of his right to testify . . .
at the suppression hearing"; (5) "not [being] prepared for trial"; and (6) "advising
petitioner that he could not appeal his conviction pursuant to a guilty plea."

The respondent has filed a motion to dismiss, arguing that Cromartie's claims are

procedurally barred from federal habeas review. Cromartie has responded to the motion, making

the matter ripe for disposition.

## DISCUSSION

### A. Procedural Default

The parties disagree on whether Cromartie exhausted his state court remedies as to each

of his claims, as required under 28 U.S.C. § 2254(b) & (c). "[A] federal court may not grant a

writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his

state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d

276, 288 (4th Cir. 2000) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). To exhaust

state remedies, petitioner "must fairly present the substance of his claim to the state's highest

court. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). The exhaustion requirement is not

satisfied if petitioner presents new legal theories or factual allegations for the first time in the

federal habeas petition. Id.

7

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray, 518 U.S. at 162.

Respondent argues that because Cromartie did not present his claims as currently framed to the Supreme Court of Virginia, these claims are not exhausted. Respondent further asserts that these claims would now be procedurally defaulted, under Virginia Code § 8.01-654 (A)(2)(timeliness of petition) and § 8.01-654(B)(2) (prohibition of successive petitions). On this basis, respondent moves for dismissal of the claims as procedurally barred from federal habeas review. Cromartie insists that the facts and legal theories presented to both state habeas courts are the same as those presented in his federal habeas claims, and that his claims are thus exhausted and not defaulted.

Rather than parse out exhaustion questions, as the parties invite, the court deems properly exhausted—and will consider on the merits—only those claims of ineffective assistance that Cromartie presented in the circuit court petition, along with the facts presented in support of that petition. To the extent that the federal petition raises additional legal arguments or facts not squarely presented in support of those claims in the circuit court petition, those matters are procedurally barred from review in this court and must be dismissed as such, because Cromartie fails to show any cause for these defaults. Gray, 518 U.S. at 162; see also Cullen v. Pinholster, 562 U.S.__, __, 131 S. Ct. 1388, 1398 (2011) (holding that federal habeas court's review of state

8

court's adjudication of petitioner's claim is limited to "the record before the state court," in reference to United States Supreme Court "precedents as of the time the state court renders its decision").

## B. Ineffective Assistance Claims

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, the petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances and facts known to counsel at the time of the representation. Id. at 687-88. The petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

Second, to show prejudice, the petitioner must demonstrate "a reasonable probability" that but for counsel's errors, the outcome would have been different. Id. at 694-95. When the petitioner alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). If it is clear that the petitioner has not satisfied one prong of the Strickland/Hill test, the court need not inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697.

Because the state courts adjudicated Cromartie's ineffective assistance claims on the merits,[3] the nature of the court's review is set forth in 28 U.S.C. § 2254(d).[4] Under § 2254(d),

---

[3] The state circuit court denied habeas relief on his ineffective assistance claims for reasons stated in a written order, while in the habeas appeal, the Supreme Court of Virginia also denied relief without stating its

9

federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by Strickland. . . ." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Thus, a "doubly deferential judicial review . . . applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Id. at 123. "The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Id. (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citation omitted).

As to each of Cromartie's ineffective assistance claims, the state habeas courts found that Cromartie failed to meet his burden to show deficient performance and resulting prejudice under Strickland and Hill. Under § 2254(d), this court finds that this disposition was not contrary to, or an unreasonable application of, established federal law, and was not based on an unreasonable determination of the facts in the state court record, as to any of Cromartie's habeas claims.

---

reasons. For purposes of federal habeas review, this court must presume that both courts adjudicated and rejected each of Cromartie's claims on the same facts and legal grounds. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

[4] When reviewing a claim adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). A state court's adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. Id. at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Case 7:14-cv-00215-GEC-RSB   Document 18   Filed 03/31/15   Page 10 of 21   Pageid#: 504

### 1. Strategic decisions during the suppression hearing

In his first state claim of ineffective assistance, Cromartie asserted that counsel was ineffective for failing to suppress evidence that was illegally gathered in a violent manner. The state habeas court found this claim to be refuted by the record, noting that counsel brought and litigated a motion to suppress, but that the trial court found from the testimony and video evidence that no Fourth Amendment violation occurred and denied the motion.[5] The habeas court held that counsel's lack of success on the suppression issue did not prove either deficient performance or resulting prejudice and dismissed the claim under both prongs of Strickland.

The state court's order did not address all of the facts and arguments Cromartie raised in this claim that counsel mishandled the suppression proceeding. He complained that counsel failed to show that Clark abandoned the traffic stop to search for drugs, did not call witnesses, did not allow Cromartie to testify to show how the police dashboard camera footage had been altered, and did not present any witnesses or a defense. Cromartie also asserted that counsel did not provide the habeas court with legal authority in support of the defense position, including United States v. Digiovanni, 650 F.3d 498 (4th Cir. 2011), a traffic stop case decided just after

---

[5] In announcing the basis for denying the motion to suppress, the Court stated, in part:
> So, clearly, this Court finds that the officers had reasonable articulable suspicion for the stop based on their visual estimation that the vehicle was traveling in excess of ten miles per hour over the speed limit and the fact that it had crossed a white line. The officers had the authority to contact dispatch and obtain information about the driver. . . .to detain any passengers during the duration of the stop. . . . to ask any question unrelated to the traffic violations. . . . to order the defendant . . . out of the vehicle and . . . to walk a drug sniffing dog around the vehicle. All of that is well established under Virginia and U.S. Supreme Court cases.
> The question becomes, well, before any of those items were done, . . . had the officers somehow abandoned the traffic stop? Well, the evidence in this case is essentially confirmed that they had not. . . . Clark testifies that . . . he went to the vehicle to seek further information, namely an insurance card or some sort of insurance information in furtherance of the traffic stop. So the defendant was never told he was free to leave, he was never told that the traffic stop had concluded. And there is no evidence that that traffic stop had been concluded. There's no evidence that the officer gave his license and registration back and that he had concluded the traffic stop or abandoned the traffic stop at that point in time. . . .
> So, clearly, the officer had the right . . . to ask the defendant to . . . step out of the vehicle.

(Tr. 88-89, Oct. 28, 2011.) The court continued: "The fact that the defendant in this case was not cooperative and it resulted in him being . . . extracted from a vehicle in a physical manner does not change the law [or] the Court's analysis in this case." (Id. 89.)

11

the general district court hearing. The record does not support these contentions that counsel's representation was deficient or prejudicial.

As summarized in Digiovanni, the Fourth Amendment protects citizens against "unreasonable searches and seizures," and a traffic stop constitutes an investigative seizure. 650 F.3d at 506 (citing Terry v. Ohio, 392 U.S. 1 (1968)). Under Supreme Court precedent, such a stop is constitutionally reasonable if, initially, police have probable cause to believe the driver has committed a traffic violation and if they detain the driver no longer than necessary to complete all tasks "reasonably related in scope to the circumstance that justified the stop." Id. The officer's questions and actions need not be exclusively centered on the purpose for the stop, if they do not extend the detention longer than necessary for completion of the traffic stop tasks. Id. If the facts show no more than de minimis delay past the time needed for such tasks, ulterior motives the officers may have had, such as investigating for a drug trafficking connection, are irrelevant to the Fourth Amendment analysis. Id.

As discussed, defense counsel's questioning and arguments at the hearing focused on this very analysis: whether the officers had probable cause for the initial stop and whether any of Clark's actions showed abandonment of traffic issues and extended his detention of Cromartie past the scope of the stop. Counsel could reasonably have believed, however, that emphasizing the facts supporting Judge Helvin's ruling on probable cause was the strongest defense argument, and that defense witness testimony would not have significantly bolstered that defense. "[T]he decision whether to call a defense witness is a strategic decision, demanding the assessment and balancing of perceived benefits against perceived risks," and a habeas court must give great deference to such decisions. United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (rejecting claim that counsel was ineffective in failing to call three jail house witnesses who might have

provided exculpatory evidence). "[A] fundamental reality of trial practice is that often a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses." Id. at 318; see also Potts v. Hinkle, No. 7:06CV00524, 2007 WL 1577337, at *3 (W.D. Va. 2007) (finding that counsel's obligation to "'require the prosecution's case to survive the crucible of meaningful adversarial testing,' . . . does not necessarily require [counsel] to present evidence at trial." ) (quoting United States v. Cronic, 466 U.S. 648, 657 (1984)).

The court cannot find unreasonable counsel's decision not to use Cromartie's seemingly self-serving testimony or that of other eye witnesses to attack the accuracy of the video and the credibility of the officers on minor discrepancies. Photocopies of case law in the state court file and the transcript reflect that that counsel provided authority in support of his positions. The fact that the Court compared the facts in Cromartie's case to the Thomas decision, rather than referring to Digiovanni by name, does not prove that counsel failed to provide appropriate authority. In short, Cromartie has not shown that counsel's representation on the suppression issues was either professionally deficient or prejudicial, or that the habeas court's dismissal of this claim was unreasonable.

## 2. No interlocutory appeal

In the circuit court proceeding, defense counsel moved to dismiss the indictments on the ground of collateral estoppel, based on Judge Helvin's finding of no probable cause. After an extensive hearing on the issue, Judge Yeatts denied the motion to dismiss under Virginia Code Annotated § 19.2-60. This section provides that if "a court not of record," like the general district court, grants a motion to suppress evidence based on a finding that a search or seizure of property was unlawful, "such property shall not be admissible in evidence at any hearing or trial

13

before that court, but the ruling shall have no effect on any hearing or trial in a court of record." Va. Code Ann. § 19.2-60. Judge Yeatts further found that the constitutional doctrine of collateral estoppel did not require dismissal of Cromartie's indictments, because the general district court's ruling decided an issue of law, not an ultimate issue of fact material to the offenses to be tried in the circuit court. (See gen., Tr. 28-30, October 27, 2011.)

In his second state habeas claim of ineffective assistance, Cromartie faulted counsel for failing to file an immediate appeal from the circuit court's denial of his motion to dismiss the indictments. The habeas court dismissed this claim as without merit under both prongs of Strickland. The Court noted that counsel had no basis on which to pursue an interlocutory appeal, because criminal appeals in Virginia lie only from final judgments and the Constitution does not provide otherwise, citing West v. Commonwealth, 455 S.E.2d 1 (1995) (holding that defendant claiming double jeopardy has no federal constitutional right to require Virginia courts to allow interlocutory criminal appeal). Cromartie here fails to show that the state court's disposition of this claim was unreasonable under § 2254(d), or that counsel's overall efforts on the collateral estoppel issue were professionally deficient or prejudicial.[6]

### 3. Failure to disclose evidence

The third ineffective assistance claim in Cromartie's state petition faulted counsel for failing to show him a copy of the video footage and the certificate of analysis from the lab tests for the cocaine recovered from his car and apartment, and that counsel's failure to do so led him to make "unintelligent, unknowing and involuntary decisions" about his case. If he had seen these items before the circuit court suppression hearing, Cromartie argued, he would have

---

[6] To the extent that Cromartie may be arguing that counsel was ineffective for raising the collateral estoppel argument, his claim also fails. An attorney "may not be faulted for a reasonable miscalculation," like attempting a novel argument. Harrington v. Richter, 562 U.S. 86, 110 (2011).

accepted an earlier plea offer for a five-year sentence that the prosecution extended before the second suppression hearing. The habeas court found this claim without support in the record, because Cromartie presented no evidence, other than his own statements, to prove the videotape's inaccuracy. See, e.g., Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced").

The state habeas court reviewed written accounts Cromartie provided to counsel after the preliminary hearing, comparing his memories of the stop to the general district court transcript. The habeas court noted only two discrepancies between these accounts and the transcript: Cromartie claimed the officers took him out of camera range at one point and that they returned his license and registration, while the video and the officers' testimony did not so indicate. The habeas court emphasized that Cromartie knew these facts, as well as the amount of cocaine he had possessed, so he failed to show what additional information would have come to light through viewing the video or the certificate of analysis earlier than he did. The Court also found that Cromartie's sentencing guideline range was properly calculated on the proper drug amount and dismissed his guideline claim under state law.

This court cannot find counsel's alleged omissions here to be unreasonable under the circumstances he faced at the time. Strickland, 466 U.S. at 689 (admonishing habeas courts that "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time"). First, Cromartie offers no evidence that counsel had a copy of the same, purportedly altered video footage that was played at the circuit court hearing or that he had other means to show any video to Cromartie at the jail. Second, counsel could reasonably have believed that viewing the recording was not critical to the defense

strategy, since it did not show Cromartie's driving behavior. Third, even now, Cromartie has not proved that the videotape was edited. In any event, proof gathered after trial that the video footage was altered or inaccurate in some respect would not render counsel's decisions unreasonable, given the facts known to him at the time when he was preparing for the suppression hearing.

Fourth, Cromartie has not demonstrated any impact on his rejection of the first plea offer. In a guilty plea context, a defendant may prove ineffective assistance if he shows that counsel's deficient advice led to the rejection of a plea offer, resulting in a more severe sentence under a later plea offer or after conviction at trial, Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012), and demonstrates a reasonable probability he would have accepted the plea offer, had he been afforded effective assistance of counsel, Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399, 1409 (2012). Cromartie has not alleged that counsel advised him against taking this plea offer, based on the evidence presented at the preliminary hearing. Moreover, as discussed, he states no fact that he would have learned from the video or the certificate of analysis that would have convinced him to accept a plea offer for 5 years in prison, instead of renewing his suppression motion in the circuit court after his success on that issue before Judge Helvin.

### 4. Counsel's investigation of the case

Cromartie asserted in his fourth state ineffective assistance claim that counsel did not investigate eye witnesses and evidence to prove the videotape was altered. Cromartie submitted an affidavit from Joyce Wood, stating that she witnessed the traffic stop and recorded some of it on her cell phone. Althena Williams' affidavit stated that she saw the stop and believed Cromartie was not violating any laws when police attacked him. Cromartie also complained that counsel did not recover police dispatch records or obtain cell phone records to show he received

16

an incoming call at 7:53 p.m. on May 20, 2011, at the same time the videotape showed the officers taking him into custody. The state habeas court dismissed this claim under both prongs of Strickland, because this evidence did not support a viable argument that the videotape, authenticated by the officers' testimony, had been edited. The Court noted that neither Wood nor Williams predicted testimony they could present to help Cromartie prove that the timing or events of the stop differed from the Commonwealth's evidence, and that Cromartie failed to produce the dispatch records or show how counsel could have used them to aid the defense argument. Finally, the Court found the phone records inconclusive on any point, as they presented no reason to believe they were synchronized with the time designations on the videotape and did not indicate whether someone answered the incoming calls or they went to voicemail.

"[A]lthough counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." United States v. Dyess, 730 F.3d 354, 362 (4th Cir. 2013) (internal quotations and citation omitted). Without some reason to believe that the video footage differed from actual events in some material respect, counsel could reasonably have believed that an investigation of evidence to partially discredit it or the officers' corroborating testimony was not an effective use of preparation time or a beneficial addition to the defense strategy at the suppression hearing. Moreover, Cromartie has not presented evidence on which he could establish that absent counsel's failure to develop and adduce this evidence, the outcome at the hearing would have been different. Accordingly, the court concludes that the state habeas court's disposition of this claim under Strickland was reasonable.

### 5. Failure to call Cromartie to testify

In his fifth ineffective assistance claim in the state <u>habeas</u> petition, Cromartie asserted that although he was sworn at the start of the suppression hearing as a potential defense witness, counsel erred in refusing to call him to testify, after he told counsel the video footage had been altered. The <u>habeas</u> court dismissed this claim under both prongs of <u>Strickland</u>.

It is clear that Cromartie knew he had a right to testify on his own behalf. <u>See</u> <u>Rock v. Arkansas</u>, 483 U.S. 44, 51-52 (1987). His claim, that he wanted to testify and counsel advised against it, must be evaluated under <u>Strickland</u>. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). "Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, . . . the defendant must overcome [a strong] presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u> 466 U.S. at 689. An attorney's reasoned advice that his client should not testify is just such a strategic decision. <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002) (citing other cases).

Cromartie does not overcome the presumption that counsel made a reasonable tactical decision in not calling him as a witness. Cromartie now alleges that he would have testified to a sequence of events during the stop different than the account the officers gave, as corroborated by the video footage. As discussed, however, the details Cromartie provided to counsel were relatively minor discrepancies, based on Cromartie's own memory. Counsel could reasonably have believed that such testimony from a convicted felon trying to escape another conviction, would not be sufficiently credible to persuade the court that the Commonwealth's evidence was so inaccurate as to require suppression of the evidence. Counsel could also have believed the better tactic was to keep the focus of the hearing on the lack of justification for the initial stop, a

tactic which had proven successful before Judge Helvin. The court cannot find that the state court's adjudication of this claim was unreasonable under § 2254(d).

### 6. A forced guilty plea

Cromartie complained in this sixth state <u>habeas</u> claim of ineffective assistance that because counsel failed to achieve dismissal of the indictments or suppression of the evidence, he was "forced" to accept a plea bargain or face a much longer potential sentence of imprisonment if convicted after a trial. He claimed that counsel failed to investigate or prepare any defense for trial, told him the high cost of appealing the denial of the suppression motion without explaining that he could obtain court-appointed counsel, did not explain the structure of the sentence provided in the plea agreement until one day before the guilty plea hearing, and misled him about sentencing procedures.[7] The state <u>habeas</u> court found this claim to be directly refuted by Cromartie's plea colloquy. This court agrees.

At the plea colloquy, Cromartie stated that he understood the charge and had discussed possible defenses with counsel. He stated that he had decided for himself to plead guilty and was doing so because he was, in fact, guilty of the charge. Cromartie expressly affirmed that no one had threatened him or made any promises in exchange for the guilty plea and acknowledged that he was satisfied with counsel's representation. (<u>See gen</u>. Tr. 7-15, Oct. 31, 2011.) These representations in open court "carry a strong presumption of verity. The subsequent presentation of conclusory allegations [on collateral review] unsupported by specifics is subject to summary

---

[7] Specifically, Cromartie complained that counsel told him that he would have an opportunity to withdraw his guilty plea for a period after the plea hearing before the sentence became final. The Court corrected any misconception here, however, by stating at the plea hearing that the Court would accept the plea agreement only after preparation of the presentence report. The Court asked Cromartie: "Do you understand that if the Court rejects the agreement you have the right to withdraw your guilty plea and go before another judge for trial." (Tr. 14, Oct. 31, 2011.) Cromartie affirmed that he understood. Because the Court accepted the plea agreement, no further sentencing proceeding was necessary. For lack of cause shown, the Court denied Cromartie's pro se motion to withdraw his guilty plea on November 17, 2011.

dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Id. at 74-75. Because Cromartie makes no such showing, he is bound by his statements during the guilty plea hearing which indicate that he knowingly and voluntarily entered that plea.

In any event, Cromartie does not allege any viable defense that counsel could have discovered with additional investigation or show any reasonable probability that if he and counsel had discussed the plea agreement or possible trial defenses in more detail, he would have rejected the plea bargain and insisted on a trial, given the risk of a much higher sentence than the plea agreement provided. Hill, 474 U.S. at 58-59. This court thus finds that the state court's adjudication of this claim was reasonable.

### 7. No assistance with post-conviction relief

In his last state habeas claim of ineffective assistance of counsel, Cromartie faulted counsel for failing to properly advise and assist him in pursuing a habeas action. The habeas court dismissed this claim because there is no constitutional right to the effective assistance of counsel in habeas proceedings. See Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) ("[I]n the postconviction context[,] prisoners have no constitutional right to counsel.") (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)). As Cromartie fails to show that this adjudication was contrary to established federal law, this claim must be dismissed under § 2254(d) as without merit.

### 8. Cumulative errors by counsel

In his habeas appeal petition to the Supreme Court of Virginia and in his federal petition, Cromartie asserted that the court could find, from the cumulative effect of counsel's alleged

omissions and mistakes, that the attorney's representation was professionally deficient. This argument is contrary to the constitutional standard the court must apply to an ineffective assistance claim, however. It is well established in the Fourth Circuit that the habeas court must "individually assess" each allegation of defense counsel error, rather than considering whether the cumulative impact of counsel's several alleged errors might add up to deficient performance. See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) (citing other cases); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) (holding that attorney's acts or omissions "that are not unconstitutional individually cannot be added together to create a constitutional violation").

## CONCLUSION

For the reasons stated, the court concludes that Cromartie has not carried his burden under § 2254(d) to show that the state habeas courts' adjudication of his ineffective assistance claims was contrary to, or an unreasonable application of, established federal law, or based on an unreasonable interpretation of the facts in the record. To the extent that Cromartie raised additional claims in the federal petition or additional facts not presented to the state habeas court in support of his claims, they are procedurally barred from habeas review in this court. Accordingly, the court will grant respondent's motion to dismiss. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: This _31st_ day of March, 2015.

Chief United States District Judge

21